# In the United States Court of Federal Claims

No. 12-181 T

(Filed January 10, 2014)

* * * * * * * * * * * * * * * * * * * *

DONNA EBEYER AND GLENN
EBEYER,

              *Plaintiffs*,

      v.

THE UNITED STATES,

            *Defendant*.

* * * * * * * * * * * * * * * * * * * *

|  |
|---|
| Tax; Refund Claim; 26 U.S.C. § 6511(b)(2)(A) (2012); Whether Plaintiffs Requested an Extension to File Their 2006 Federal Income Tax Return. |

    *Nathaniel L. Strand*, New Orleans, LA, for plaintiffs.

    *Jacob E. Christensen*, United States Department of Justice, with whom was *Kathryn Keneally*, Assistant Attorney General, Washington, DC, for defendant. *David I. Pincus*, United States Department of Justice, Washington, DC, of counsel.

———————————————

## OPINION

———————————————

**BUSH**, *Senior Judge*.

    Now pending before the court is defendant's motion for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). Defendant's motion has been fully briefed and is ripe for decision. Oral argument was neither requested by the parties nor required by the court. Because the court concludes that plaintiffs' claim is time-barred under § 6511(b)(2)(A) of

the Internal Revenue Code, 26 U.S.C. § 6511(b)(2)(A) (2012), defendant's motion is granted.[1]

# BACKGROUND[2]

Donna and Glenn Ebeyer[3] filed their 2006 joint federal income tax return on October 14, 2010.[4]  Def.'s Proposed Findings of Uncontroverted Fact (DPFUF) ¶ 1; Pls.' Resp. to DPFUF ¶ 1.  On their tax return, the Ebeyers reported an overpayment of $3352 for the 2006 tax year, and requested a refund of that amount.  DPFUF ¶ 2; Pls.' Resp. to DPFUF ¶ 2; Def.'s Mot. App. E, Ex. 1 at E5 (Lines 73 and 74a).[5]  The requested refund constituted the difference between the

---

[1]/ Unless otherwise specified, all references to the Internal Revenue Code (I.R.C. or Code) point to the 2012 version of Title 26 of the United States Code.

[2]/ The facts recounted in this opinion are taken from plaintiffs' complaint and the parties' submissions in connection with defendant's motion for summary judgment.  Except where otherwise noted, the facts recited here are undisputed.

[3]/ Despite the apparent typographical error in the caption of plaintiffs' complaint, it appears from the record that the proper spelling of Mr. Ebeyer's first name is "Glenn" rather than "Glen."  *See, e.g.*, Def.'s Mot. Apps. A-E.  Therefore, the court adopts the former spelling, as that is the spelling used by the parties throughout the record and their pleadings.

[4]/ In their complaint, plaintiffs allege that they "filed a Form 1040 for the 2006 taxable year on October 14, 2009."  Def.'s Mot. App. E, Ex. 1 ¶ 3.  Mr. Ebeyer testified at his deposition, however, that plaintiffs filed their 2006 return in October 2010, and that the inconsistent allegation in plaintiffs' complaint resulted from a typographical error.  *Id.* App. C at 8-10.  The evidence offered by the government corroborates Mr. Ebeyer's testimony in that regard.  *See, e.g., id.* App. E, Ex. 1 at E5 (Form 1040 for the 2006 tax year signed by Mr. and Mrs. Ebeyer on October 6, 2010), Ex. 2 (October 6, 2010 letter from Brandi R. Masson to the Ebeyers enclosing "your 2006 federal income tax return" and asking the Ebeyers to "sign and date" the return and mail it to the Internal Revenue Service), Ex. 3 (January 13, 2011 letter from the Ebeyers to the Internal Revenue Service stating that "[o]n October 11, 2010 we forwarded tax returns for 2006 and 2009").  Based on this evidence, plaintiffs concede that their refund claim "was received by the [Internal Revenue Service] on October 14, 2010."  Pls.' Resp. at 1; *see also* Pls.' Resp. to Def.'s Proposed Findings of Uncontroverted Fact (DPFUF) ¶ 1.

[5]/ Defendant attaches to its motion a copy of plaintiffs' complaint.  *See* Def.'s Mot. App. E, Ex. 1.  The copy of plaintiffs' complaint attached to defendant's motion is paginated, whereas plaintiffs' complaint as originally filed is not.  For the sake of clarity, when referring in this (continued . . .)

Ebeyers' tax liability of $8946 and their withholdings of $12,298, as reported on their 2006 return.  DPFUF ¶¶ 3-4; Pls.' Resp. to DPFUF ¶¶ 3-4; Def.'s Mot. App. A at A5, App. E, Ex. 1 at E5 (Lines 44 and 64).

On February 10, 2011, the Internal Revenue Service (IRS) disallowed the Ebeyers' refund claim as untimely because they filed their 2006 return, on which they claimed a refund of $3352, "more than 3 years after the due date" for the filing of their return.  Def.'s Mot. App. E, Ex. 1 at E6.  The Ebeyers filed an administrative appeal of the IRS disallowance on March 9, 2011.  *See id.* App. E, Ex. 4.  In their appeal, the Ebeyers stated that their 2006 return "was due by April 15, 2007," but that they had waited to file their return (and their refund claim) because they had lost their 2006 tax files in the aftermath of Hurricane Katrina:

> *Our 2006 tax return was due by April 15, 2007.*  In 2005 & 2006 after Hurricane Katrina, we extended housing (our home) to family members (our son and parents) who lost their homes in the storm.  Consequently, the different families' belongings and <u>important documents</u> were commingled in our home and eventually ended up stored in one central location.  This included our tax info for 2005 and 2006.  Finally when all families went to their own homes, some of our belongings and important files went missing.  We were not able to locate our tax info for 2006.  At that time we felt as though they were lost and there was nothing we could do.  *It was past the deadline (April 15, 2007) to file and we were under the impression that if we had not filed for an "extension" we were going to lose our refund.*
>
> In late 2010 we spoke to an income tax preparer who advised us that we could still file taxes for 2006 (that it was not too late since we did not owe taxes but were entitled to a refund).  We had the 2006 return prepared and then mailed it to IRS.

---

opinion to plaintiffs' complaint, the court cites to the paginated copy of plaintiffs' complaint attached to defendant's motion.

*Id.* App. E, Ex. 4 at E10-E11 (italics emphases added).

In subsequent correspondence to the IRS dated April 28, 2011 and June 16, 2011, the Ebeyers acknowledged that they had filed their refund claim "late" yet asked the IRS to make an exception to the deadline "based on exceptional circumstances." Def.'s Mot. App. E, Ex. 5 at E12 (April 28, 2011 letter explaining the Ebeyers' "reasons for filing our refund late and why we are asking for the IRS to make an exception to the deadline based on exceptional circumstances explained in our March 9, 2011 appeal"), Ex. 6 (June 16, 2011 letter "pleading for the IRS to make an expection [sic] to the deadline based on exceptional circumstances" and stating that "[w]e are certain that . . . our reasons for filing late meet the criteria for appeal and payment of our 2006 tax refund").

In July 2011, the IRS Brookhaven Appeals Office upheld the denial of plaintiffs' refund claim as untimely. *See* Def.'s Mot. App. E, Ex. 1 at E7. In a letter to the Ebeyers dated July 26, 2011, IRS Appeals Officer Grace Schmitz concluded that "there is no basis to allow any part of your claim." *Id.* The crux of the controversy in this case originates from the following statement provided by Ms. Schmitz, setting forth an explanation of her determination:

> You had extended your time to file your return with form [4868]. This would have protected the right to a refund until 10/15/2010. The 2006 tax return did not have federal postponements due to Katrina. Although your actions toward [the] member[s] of your family were a reasonable excuse for not filing timely, reasonable cause cannot extend or change the limitations of time for filing a claim set by law.

*Id.*

Plaintiffs filed this refund suit on March 19, 2012, seeking judgment for the amount of the refund claimed on their 2006 return, plus fees and costs under I.R.C. § 7430. In their complaint, plaintiffs allege that they "had been granted an automatic 6-month extension for the filing of [their 2006] return after filing a form 4868," Def.'s Mot. App. E, Ex. 1 ¶ 3, and therefore they "had until October 15,

2010 to request a refund," *id.* ¶ 7.  Plaintiffs attach to their complaint a copy of Ms. Schmitz's July 26, 2011 letter stating that the Ebeyers "had extended your time to file your return with form [4868]."  *Id.* at E7.  Plaintiffs rely upon that statement to assert that the IRS "recognized" that the Ebeyers had been granted a six-month extension in which to file their 2006 return.[6]  *Id.* ¶ 7.

Defendant's discovery efforts in this case, which included written discovery as well as the depositions of Mr. and Mrs. Ebeyer, focused upon plaintiffs' allegation that they requested and were granted a six-month extension of time to file their 2006 return.  These discovery efforts, however, yielded little specific information regarding the Ebeyers' alleged request for an extension.  Although Mr. and Mrs. Ebeyer provided interrogatory answers and deposition testimony stating, in general terms, that Mr. Ebeyer prepared the extension request and submitted it to the IRS before the April 2007 deadline for the filing of the Ebeyers' 2006 return, *see* Def.'s Mot. App. C at 18, 22-23, 25; *id.* App. D at 16-17; *id.* App. E, Ex. 8 at E22 (Mrs. Ebeyer's answer to Interrogatory No. 1 stating that "[m]y husband, Glenn Ebeyer, prepared the extension form for the 2006 taxable year"), E23 (Mr. Ebeyer's answer to Interrogatory No. 1 stating that "there is no doubt in my mind that I did prepare [the extension request] and did send it [to the IRS]"); *id.* App. E, Ex. 15, they provided scant detail regarding their alleged request.

Most notably, the Ebeyers were unable to recall specific details regarding how and when their alleged extension request was prepared and sent to the IRS. *See* Pls.' Resp. to DPFUF ¶¶ 12-14.  Mr. Ebeyer testified that he "probably filed [the extension request] electronically" but did not "accurately remember which method I used."  Def.'s Mot. App. C at 18; *see also id.* App. C at 22 ("I cannot a hundred percent say I did it via a letter or via a piece of mail or electronically.  I

---

[6]/  Plaintiffs also allege in their complaint that their 2006 return constituted an "informal claim" for a refund, and that the IRS erred in supposedly disallowing plaintiffs' refund claim on the ground that the Ebeyers "did not file a specific refund request, such as through a Form 843." Def.'s Mot. App. E, Ex. 1 ¶¶ 7-8.  However, plaintiffs abandon that particular contention in their brief in response to defendant's motion for summary judgment, stating that "[t]he original complaint did not anticipate a dispute as to the extension or the deadline, since the IRS was thought to have admitted and conceded these issues," but rather "anticipated the government's argument that the Ebeyers never made a valid refund request by the deadline."  Pls.' Resp. at 4 n.1.  Because plaintiffs do not advance their "informal claim" argument in response to defendant's motion for summary judgment, the court need not consider it.

5

can speculate, but that would be about it."); *id.* App. E, Ex. 8 at E23 (Mr. Ebeyer's answer to Interrogatory No. 1 stating that "I do not remember exactly how [the extension request] was transmitted"); *id.* App. E, Ex. 15 at E51 (same). Additionally, although Mr. Ebeyer testified that he submitted the extension request to the IRS "[p]rior to April 15th, [2007,]" he could not recall a specific date or even a range of dates.  Def.'s Mot. App. C at 25; *see also id.* App. E, Ex. 15 at E51 (Mr. Ebeyer's supplemental answer to Interrogatory No. 1 stating, "I don't remember exactly when [the extension request] was prepared or sent, but it was sometime before April 15, 2007").  Mrs. Ebeyer was likewise unable to provide specific details regarding when and how her husband submitted the alleged extension request.  *See* Def.'s Mot. App. D at 16-17; *id.* App. E, Ex. 8 at E22 (Mrs. Ebeyer's answer to Interrogatory No. 1 stating that "I do not remember exactly how [the extension request] was transmitted, but I distinctly remember [Mr. Ebeyer] going on the computer and printing it out"); *id.* App. E, Ex. 15 at E50 (Mrs. Ebeyer's supplemental answer to Interrogatory No. 1 stating, "I don't remember exactly when it was prepared or sent, or exactly where it was transmitted to").

The Ebeyers also admitted that they could not produce a copy of their alleged extension request, or, for that matter, *any* contemporaneous documentary evidence of their having mailed or otherwise filed such a request.  *See* Pls.' Resp. to DPFUF ¶ 10 ("agree[ing]" that "[p]laintiffs do not have a copy (signed or unsigned) of the alleged application for an extension of time to file their 2006 income tax return"); Def.'s Mot. App. C at 17-18 (Mr. Ebeyer's deposition testimony that he "do[es] not have a physical copy" of the alleged extension request and has "no physical proof" of having submitted the request); *id.* App. D at 10 (Mrs. Ebeyer's deposition testimony that she "could not find any copies" of the alleged extension request); *id.* App. E, Ex. 8 at E20 (plaintiffs' responses to defendant's document requests stating that the Ebeyers "are unable to locate a copy of the 6-month extension form that was filed" or "any . . . mail receipt or similar item," and "do not recall receiving any document sent by the IRS for the purpose of 'confirmation' of the extension in 2007 and . . . are not able to locate such a document").

On April 26, 2013, after the close of discovery, the government filed a motion to dismiss plaintiffs' refund claim pursuant to RCFC 12(b)(1).  In that motion, the government argued that plaintiffs' refund claim is barred by I.R.C. §

6

6511(b)(2)(A), and, consequently, plaintiffs are unable to establish this court's subject matter jurisdiction over their claim. On July 31, 2013, while the government's motion to dismiss was pending, the Federal Circuit issued a precedential decision in which it stated that "the look-back provision [in § 6511(b)(2)(A)] is not jurisdictional in nature" and that a refund claim barred by § 6511(b)(2)(A) must be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief could be granted. *Boeri v. United States*, 724 F.3d 1367, 1369 (Fed. Cir. 2013) (citation and internal quotation marks omitted). Following *Boeri*, this court denied the government's RCFC 12(b)(1) motion on August 7, 2013 but allowed the government an opportunity to advance its contentions based on § 6511(b)(2)(A) by filing a motion for summary judgment under RCFC 56.

Defendant filed a motion for summary judgment on September 4, 2013. In that motion, which has been fully briefed, the government advances the same principal argument as it advanced in its previous motion to dismiss under RCFC 12(b)(1), *i.e.*, that plaintiffs' refund claim is barred by § 6511(b)(2)(A).

## DISCUSSION

### I.    Standard of Review for RCFC 56 Motions for Summary Judgment

The availability of summary judgment helps a federal court "'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material if it would affect the outcome of the suit. *Anderson*, 477 U.S. at 248. A dispute of material fact is genuine if a reasonable trier of fact could return a verdict for the nonmoving party. *Id.*; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted) (stating that there is no genuine issue of material fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party").

The moving party bears the burden of showing that there is an absence of any genuine issue of material fact, and the court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in favor

of that party. *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citations omitted). "The moving party, however, need not produce evidence showing the absence of a genuine issue of material fact . . . ." *Id.* (citing *Celotex*, 477 U.S. at 325). Rather, "when the non-moving party bears the burden of proof on an issue, the moving party can simply point out the absence of evidence creating a disputed issue of material fact" and thereby shift the burden to the nonmoving party to produce evidence showing that there is such a disputed factual issue in the case. *Simanski v. Sec'y of Health & Human Servs.*, 671 F.3d 1368, 1379 (Fed. Cir. 2012) (citing *Celotex*, 477 U.S. at 325, and *Dairyland*, 16 F.3d at 1202).

A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Mere allegations or denials, conclusory statements, or evidence that is merely colorable or not significantly probative are not sufficient to preclude summary judgment. *Id.* at 248-50, 256; *see also Matsushita*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citations omitted); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835-36 (Fed. Cir. 1984) ("With respect to whether there is a genuine issue, the court may not simply accept a party's statement that a fact is challenged.") (citation omitted). "The party opposing the motion must point to an evidentiary conflict created on the record by at least a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant." *Barmag*, 731 F.2d at 836. Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party bears the burden of proof at trial. *Dairyland*, 16 F.3d at 1202 (citing *Celotex*, 477 U.S. at 323).

## II.    Timeliness Requirements for Tax Refund Claims

I.R.C. § 6511 contains two separate timeliness requirements for tax refund claims, both of which must be satisfied in order for a taxpayer to recover. First, § 6511 contains a filing deadline specifying that unless a "[c]laim for credit or refund of an overpayment of any tax . . . [is] filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later," § 6511(a), "[n]o credit or refund [of an

overpayment] shall be allowed or made," § 6511(b)(1).  It is well-settled that satisfaction of this filing deadline is a jurisdictional prerequisite to a tax refund suit in the Court of Federal Claims.  *See, e.g.*, *Sun Chem. Corp. v. United States*, 698 F.2d 1203, 1206 (Fed. Cir. 1983) (citations omitted).

In this case, it is undisputed that plaintiffs filed their 2006 federal income tax return on October 14, 2010, and on that return claimed an overpayment of $3352 for which plaintiffs requested a refund.  *See* DPFUF ¶¶ 1-2; Pls.' Resp. to DPFUF ¶¶ 1-2; Def.'s Mot. App. E, Ex. 1 at E5 (Line 74a).  Because plaintiffs' 2006 return also constitutes a valid claim for refund of $3352, plaintiffs have satisfied the filing deadline set forth in § 6511.  *See Musungayi v. United States*, 86 Fed. Cl. 121, 124 (2009) ("Because an original income tax return that discloses the amount of overpayment constitutes a claim for refund, a taxpayer who has filed such a tax return has satisfied the three-year filing requirement of section 6511(a)." (citing Treas. Reg. § 301.6402-3(a)(5) (2008))); Def.'s Mot. at 4 ("Plaintiffs' 2006 tax return, which they filed on October 14, 2010, and on which they claimed a refund of $3,352, is considered to be a 'claim for refund' for such amount within the meaning of § 6511.  Therefore, because plaintiffs' original return also constitutes their refund claim, plaintiffs' claim satisfies the 3-year filing deadline of § 6511(a).") (citations omitted).

Unfortunately for plaintiffs, however, § 6511 contains another timeliness requirement.  Specifically, § 6511(b)(2), often described as a "look-back" provision, limits a taxpayer's available refund to the amount of tax paid during the applicable "look-back" period.  Under that provision, if a refund claim is filed within three years from the time the return was filed, "the amount of the . . . refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return."  *Id.* § 6511(b)(2)(A).  If a claim is not filed within three years from the time the return was filed, "the amount of the . . . refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim."  *Id.* § 6511(b)(2)(B).  If no tax has been paid within the applicable look-back period, plus any applicable extensions,[7] then the available

---

[7]/  The Code permits the Secretary of the Treasury to grant a "reasonable extension" of up to six months for the filing of a federal income tax return.  *See* I.R.C. § 6081(a).  Under the version of the regulations in force when plaintiffs allegedly requested an extension, a taxpayer (continued . . .)

refund is zero.  *See, e.g.*, *Baral v. United States*, 528 U.S. 431, 436 (2000) (holding that "the ceiling on [the taxpayer's] requested credit of $1,175 is zero" under § 6511(b)(2) because no tax was paid during the applicable look-back period); *Doyle v. United States*, 88 Fed. Cl. 314, 321-22 (2009) (same); *Minehan v. United States*, 75 Fed. Cl. 249, 254 n.7 (2007) ("Because Ms. Minehan hopes to recoup funds which were paid outside the period of time for which recovery is allowable under the IRC, her refund claim undoubtedly fails.").  Unlike the filing deadline, the look-back provision in § 6511(b)(2) is not a jurisdictional prerequisite but, rather, a "substantive limitation[] on the amount of recovery."  *United States v. Brockamp*, 519 U.S. 347, 352 (1997); *see also Boeri*, 724 F.3d at 1369 (citation omitted).

In its motion for summary judgment, the government contends that plaintiffs' refund claim is barred by § 6511(b)(2)(A) because "plaintiffs paid no tax within the 3-year period directly preceding the filing of their refund claim on October 14, 2010" and because plaintiffs neither requested nor were granted an extension for filing their 2006 return.  Def.'s Mot. at 3.  Plaintiffs do not dispute that their 2006 federal income tax was paid on April 15, 2007 and therefore they paid no tax during the three years preceding the filing of their refund claim on October 14, 2010.[8]  *See* Pls.' Resp. to DPFUF ¶ 5.  Plaintiffs nevertheless argue that their refund claim is not barred by § 6511(b)(2)(A) because they assert that they requested and were granted a six-month extension for filing their 2006 return, which correspondingly extended the look-back period under § 6511(b)(2)(A) by six months to April 14, 2007.  *See* Pls.' Resp. at 1-6; Def.'s Mot. App. E, Ex. 1 ¶¶ 3, 7.

---

desiring an automatic six-month extension of time for filing a return must generally submit an application for such an extension on or before the due date for filing the return.  *See* Treas. Reg. § 1.6081-4T(a)-(b) (2006) (temporary regulation promulgated on November 7, 2005, and applicable to applications for automatic six-month extensions filed after December 31, 2005 and before July 2, 2008).

[8]/  As noted, plaintiffs reported withholdings in the amount of $12,298 for tax year 2006.  Def.'s Mot. App. E, Ex. 1 at E5 (Line 64).  Plaintiffs are deemed to have paid this amount on April 15, 2007, *i.e.*, "the 15th day of the fourth month following the close of [plaintiffs' 2006] taxable year."  I.R.C. § 6513(b)(1) ("Any tax actually deducted and withheld at the source during any calendar year . . . shall, in respect of the recipient of the income, be deemed to have been paid by him on the 15th day of the fourth month following the close of his taxable year . . . .");  *Baral*, 528 U.S. at 434-36.

The government concedes that if the IRS had granted plaintiffs a six-month extension, as plaintiffs allege, then § 6511(b)(2)(A) "would not bar plaintiffs' refund claim." Def.'s Mot. at 5. Defendant argues, however, that plaintiffs have failed to identify sufficient evidence to demonstrate a genuine issue of fact regarding whether they requested such an extension. *See id.* at 5-14. Therefore, the parties' dispute centers on the issue of whether plaintiffs requested and were granted a six-month extension of the statutory deadline to file their 2006 return.

## III.   Analysis

### A.   Whether Official IRS Records Demonstrate that Plaintiffs Did Not Request an Extension

In support of its motion for summary judgment, defendant relies primarily upon official IRS records that defendant contends "establish that plaintiffs never requested, and at all events were never granted, any extension of time to file their 2006 return." Def.'s Mot. at 5. Such records, which defendant offers through the declaration of Roman G. Hernandez, an IRS Court Witness Coordinator, *see* Def.'s Mot. App. A, include "physical records maintained by the [IRS] with respect to the Ebeyers' 2006 income tax year," *id.* ¶ 5, as well as a "transcript of account electronically maintained by the [IRS] for the Ebeyers' 2006 tax year," *id.* ¶ 3.

In his declaration, Mr. Hernandez states that "[i]t is the regular practice of the [IRS], when it receives a taxpayer's timely request for an extension of time to file [a return] (whether filed electronically or in paper form), to record the request in the account electronically maintained for that taxpayer for the relevant tax year." Def.'s Mot. App. A ¶ 4. Therefore, had plaintiffs requested an extension of time to file their 2006 return, that request "would have been entered into [plaintiffs'] account and would be reflected on the . . . transcript of account" attached to Mr. Hernandez's declaration. *Id.* Plaintiffs do not dispute Mr. Hernandez's declaration in this regard. Pls.' Resp. to DPFUF ¶ 7 ("agree[ing]" that "[i]t is the regular practice of the IRS, when it receives a taxpayer's timely application for an extension of time to file [a return] (whether filed electronically or in paper form), to record the request in the account electronically maintained for that taxpayer for the relevant tax year"). The "transcript of account" pertaining to plaintiffs' 2006 return – otherwise known as a Form 4340, or "Certification of Assessments,

Payments, and Other Specified Matters" – is attached as an exhibit to Mr.
Hernandez's declaration along with a signed "Certificate of Official Record"
bearing the seal of the Department of the Treasury, *see* Def.'s Mot. App. A at A4,
and indicates that the IRS has no record of the Ebeyers ever requesting an
extension of time to file their 2006 return, *see id.* at A5.

Mr. Hernandez also states that "[i]t is the regular practice of the [IRS] to
send paper-filed requests for an extension of time to file . . . to a centralized files
location where they can later be retrieved, if necessary." Def.'s Mot. App. A ¶ 5.
According to Mr. Hernandez, "[t]he physical records maintained by the [IRS] with
respect to the Ebeyers' 2006 income tax year also do not include a request for an
extension of time to file." *Id.* ¶ 5.

Relying upon Mr. Hernandez's declaration and the attached Form 4340, the
government asserts that "[t]he IRS has no record of ever receiving, processing, or
granting an application for an extension of time for plaintiffs to file their 2006
income tax return." Def.'s Mot. at 6. Defendant further argues that "IRS records
are presumed to be true, accurate, and correct," *id.* (citing *Harris v. United States*,
44 Fed. Cl. 678, 682 (1999), *aff'd*, 232 F.3d 912 (Fed. Cir. 2000) (table), and *Davis
v. United States*, 43 Fed. Cl. 92, 94 (1999), *aff'd*, 230 F.3d 1383 (Fed. Cir. 2000)
(table)), and that "[p]laintiffs can rebut this presumption only 'by presenting
reliable evidence to the contrary,'" *id.* (quoting *Davis*, 43 Fed. Cl. at 94). Thus, the
government contends that IRS records establish that the Ebeyers never requested
and were never granted any extension of time to file their 2006 tax return.

The court agrees with defendant that Mr. Hernandez's declaration and the
attached Form 4340 are sufficient to presumptively demonstrate the absence of a
genuine issue of fact regarding whether plaintiffs requested an extension of time to
file their 2006 return. Such official records, as defendant correctly notes, are
"presumed to be true, accurate, and correct." *Harris*, 44 Fed. Cl. at 682 (citing *Sun
Oil Co. v. United States*, 572 F.2d 786, 805 (Ct. Cl. 1978); *see Brach v. United
States*, 98 Fed. Cl. 60, 66 n.13 (2011) (noting that "IRS administrative files are
generally presumed to be true, accurate, and correct") (citations and internal
quotation marks omitted), *aff'd on other grounds*, 443 F. App'x 543 (Fed. Cir.
2011); *Davis*, 43 Fed. Cl. at 94 (noting that an "IRS Certification of Lack of
Record and a declaration from an IRS employee," which indicated that the IRS did
not receive plaintiff's refund claim, "are presumed true, accurate, and correct"

(citing *H.S. & H. Ltd. of Columbia, Ill. v. United States*, 18 Cl. Ct. 241, 246 (1989))); *Dallin ex rel. Estate of Young v. United States*, 62 Fed. Cl. 589, 600 (2004) ("It is well established that a certified copy of the taxpayer's Form 4340 triggers the presumption of correctness in favor of the government . . . .") (citations and internal quotation marks omitted).

Plaintiffs do not challenge the presumptive accuracy of official IRS records demonstrating that the IRS never received a request for an extension of time for the Ebeyers to file their 2006 return. Instead, in an attempt to cast doubt on the reliability of these records, plaintiffs cite to decisions of various courts supposedly documenting "IRS malfeasances" in other cases, including instances in which the IRS lost or misplaced documents filed by taxpayers. Pls.' Resp. at 3 (citing cases). Based on these decisions in other cases, plaintiffs contend that the "[t]he IRS is not a trustworthy organization" and, therefore, may have lost or misplaced the Ebeyers' alleged request for an extension. *Id.* Plaintiffs also suggest, without record support, that the IRS "cook[ed] [its] records for purposes of this litigation." *Id.*; *see also id.* at 4 ("The Ebeyers believe that the IRS made 'updates' to their records after they were sued mentioning the absence of the extension.").

Plaintiffs' unsubstantiated assertions that the IRS altered its records so as to delete reference to plaintiffs' alleged request for extension are plainly insufficient to raise a genuine issue of fact regarding the accuracy of IRS records introduced by the government. As noted, to defeat a properly supported motion for summary judgment, the non-moving party must produce sufficient evidence to allow a reasonable finder of fact to rule in its favor. *Anderson*, 477 U.S. at 248, 256. Mere denials, conclusory statements, or evidence that is merely colorable or not significantly probative are not sufficient to preclude summary judgment. *Id.* at 248-50, 256; *see also Matsushita*, 475 U.S. at 586; *Barmag*, 731 F.2d at 835-36. Under this binding authority, plaintiffs' conclusory assertions of wrongdoing on the part of the IRS, devoid of any factual support, cannot preclude summary judgment.

Nor are plaintiffs' references to supposed "IRS malfeasances" in *other* cases sufficient to raise a genuine issue of fact regarding the accuracy of IRS records proffered by the government in *this* case. Plaintiffs' speculation that the IRS may have lost or misplaced the Ebeyers' alleged request for an extension because the IRS has done so in other cases raises nothing more than a "theoretical possibility or

'metaphysical doubt,' which is insufficient to create a *genuine* issue of material fact." *Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1334 (Fed. Cir. 2003) (quoting *Anderson*, 477 U.S. at 261); *see also Matsushita*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citations omitted).

Plaintiffs also attack the government's records on the ground that these records contain hearsay not falling within a recognized exception to the hearsay rule. *See* Pls.' Resp. at 7-8; Pls.' Resp. to DPFUF ¶¶ 6, 8-9. Specifically, plaintiffs argue that these records are "inconsisten[t]" with Ms. Schmitz's July 26, 2011 letter and, therefore, "the circumstances show a lack of trustworthiness" precluding the application of the public records exception under Rule 803(8) of the Federal Rules of Evidence (FRE):

> Mr. and Mrs. Ebeyer are also of the position that the government's "records" are inadmissible under the hearsay rule. Normally, out-of-court statements are inadmissible when offered for the truth of the matter asserted. FRE 802.
>
> While the federal rules of evidence carve out an exception to this for public records, this exception does not apply when the circumstances show a lack of trustworthiness. *See* FRE 803(8). Mr. and Mrs. Ebeyer feel that these circumstances do demonstrate such a lack of trustworthiness. The government sent them a formal Notice of Disallowance stating that they had been granted an extension, and then, after they hired an attorney and pursued this in court, the government denied ever granting an extension. This inconsistency calls into question the trustworthiness of the government's alleged records.

Pls.' Resp. at 7. Additionally, plaintiffs contend that the "business records" exception under FRE 803(6) is similarly inapplicable "because this rule also may not be used when the circumstances indicate a lack of trustworthiness." *Id.* at 8.

Finally, plaintiffs assert that Mr. Hernandez's declaration is "not admissible under FRE 803(10) relating to absence of records, because there is no regular or set policy of the government to keep extensions for any particular length of time." *Id.*; *see also id.* at 3 ("[T]he IRS does not have any clear policy on how long it keeps extensions and may destroy records of them . . . in as little as a year.").

The court rejects plaintiffs' hearsay arguments as meritless for several reasons.  First, this court and others have routinely considered Forms 4340 under the public records exception to the hearsay rule.  *See, e.g.*, *Int'l Fid. Ins. Co. v. United States*, 27 Fed. Cl. 107, 111 (1992) (noting that "[o]ther courts have held that an IRS Form 4340 is admissible evidence that creates a presumption that the IRS assessment is valid," and holding that a Form 4340 submitted by the government was "admissible evidence in support of the defendant's motion for summary judgment" (citing *Hughes v. United States*, 953 F.2d 531, 539-40 (9th Cir. 1992))).  Indeed, as noted *supra*, this court has routinely considered such documents to presumptively establish the accuracy of the matters to which they attest.

Second, plaintiffs have not shown any circumstances indicating a lack of trustworthiness requiring exclusion of the government's records.  Although plaintiffs contend that the government, as a party to this litigation, "has every incentive to lie or skew records," Pls.' Resp. at 7, plaintiffs have not offered any evidence that even remotely suggests that the government altered its records to omit reference to plaintiffs' alleged request for an extension.  Moreover, the court is not persuaded that a mere "inconsistency" between the Form 4340 attached to Mr. Hernandez's declaration and one sentence within Ms. Schmitz's July 26, 2011 letter disqualifies the Form 4340 as a public record under FRE 803(8).  Plaintiffs offer no authority, and the court is not aware of any, requiring the exclusion on hearsay grounds of a certified government record based on mere "inconsistency" between the certified record and another document.

Third, plaintiffs cite no authority requiring exclusion of Mr. Hernandez's declaration in which he stated that he reviewed the records maintained by the IRS with respect to the Ebeyers' 2006 tax return and found no reference therein to any request for an extension.  Plaintiffs cite to a section of an "Internal Revenue Manual" purportedly setting forth the IRS's records and information management policies, and argue based on that document that "the IRS does not have any clear policy on how long it keeps extensions and may destroy records of them . . . in as

little as a year." Pls.' Resp. at 3; *see also id.* at 8. Yet plaintiffs fail to demonstrate how that document rebuts Mr. Hernandez's testimony that "[i]t is the regular practice of the [IRS] . . . to record [a taxpayer's] request [for an extension] in the account electronically maintained for that taxpayer for the relevant tax year" and to "send paper-filed requests for an extension . . . to a centralized files location where they can later be retrieved." Def.'s Mot. App. A ¶ 5.

Accordingly, the court concludes that Mr. Hernandez's declaration and the attached Form 4340 are sufficient to demonstrate the absence of a genuine issue of fact regarding whether plaintiffs requested a six-month extension of time to file their 2006 return. Because plaintiffs bear the burden at trial of establishing entitlement to their claimed refund, *see, e.g.*, *Bubble Room, Inc. v. United States*, 159 F.3d 553, 561 (Fed. Cir. 1998) ("[T]he taxpayer has the burden of establishing entitlement to the specific refund amount claimed." (citing *United States v. Janis*, 428 U.S. 433, 440 (1976))), to survive summary judgment plaintiffs must come forward with sufficient evidence to allow a reasonable trier of fact to conclude that the Ebeyers requested a six-month extension, *see Anderson*, 477 U.S. at 248-50, 256. The court now turns to an analysis of whether plaintiffs have identified sufficient evidence to meet that burden.

**B.    Whether Plaintiffs' Proffered Rebuttal Evidence Is Sufficient to Raise a Genuine Issue of Material Fact**

The government contends that "plaintiffs have no competent evidence" to support their allegation that they submitted a request for an extension of time to file their 2006 return and therefore plaintiffs are unable to demonstrate a genuine issue of fact as to their alleged extension. Def.'s Mot. at 7; *see also id.* at 11-12. Plaintiffs, in response, argue that Ms. Schmitz's July 26, 2011 letter, considered together with plaintiffs' testimony that they submitted a request for an extension, is sufficient to preclude summary judgment. *See* Pls.' Resp. at 5-7.

As noted, summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party bears the burden of proof at trial. *Dairyland*, 16 F.3d at 1202 (citing *Celotex*, 477 U.S. at 323). Once official IRS records are introduced by the government, the taxpayer bears the burden of showing that the information presented therein is incorrect. *See, e.g.*, *Dallin*, 62 Fed. Cl. at 599-600 (citations omitted). Having considered all of the parties' arguments, the court

16

agrees with defendant that plaintiffs have not produced sufficient evidence to demonstrate a genuine issue of fact regarding the accuracy of the IRS records reflecting that plaintiffs never requested an extension of time to file their 2006 income tax return.

### 1.    Appeals Officer Schmitz's July 26, 2011 Letter

Plaintiffs do not dispute that they have no contemporaneous documentary evidence of their having mailed or otherwise filed a request for an extension.  *See* Pls.' Resp. to DPFUF ¶ 10; Def.'s Mot. App. C at 17-18; *id.* App. D at 10; *id.* App. E, Ex. 8 at E20.  Plaintiffs nevertheless assert that Ms. Schmitz, in her July 26, 2011 letter upholding the denial of plaintiffs' refund claim as untimely, "quite clearly stated that Mr. and Mrs. Ebeyer had been granted such an extension."  Pls.' Resp. at 3; *see also id.* at 5 ("The IRS sent a Notice of Disallowance to Mr. and Mrs. Ebeyer dated July 26, 2011, clearly stating that the Ebeyers had filed for and had been [granted] such a six-month extension for the year 2006."); Def.'s Mot. App. C at 11, 14-17; *id.* App. D at 17-18, 24-25.  Plaintiffs rely specifically upon Ms. Schmitz's statement, in her July 26, 2011 letter to plaintiffs, that "[y]ou [*i.e.*, plaintiffs] had extended your time to file your return with form [4868]."  Def.'s Mot. App. E, Ex. 1 at E7.

In response, the government argues that Ms. Schmitz's July 26, 2011 letter contains a typographical error insofar as it states that plaintiffs "had extended" their filing deadline for their 2006 return.  *See* Def.'s Mot. at 9-10; Def.'s Reply at 1-3.  Defendant contends that the referenced sentence simply omitted the word "not" and that Ms. Schmitz meant to inform plaintiffs that they "had ***not*** extended" their filing deadline.  *See* Def.'s Mot. at 9 (citing Def.'s Mot. App. B ¶ 6).  In support of this contention, defendant offers Ms. Schmitz's declaration in which she explains that

> [t]he July 26, 2011[] letter . . . mistakenly states that "You had had extended your time to file your return with form [4868]."  The word "not" was inadvertently omitted from that sentence, which should have read "You had ***not*** extended your time to file your return with form [4868]."  In fact, the Ebeyers did not file a request for an extension for 2006, and the letter's erroneous statement that they

> did conflicts with the conclusion in the same paragraph
> that they did not satisfy the "limitations of time for filing
> a claim set by law," which was the basis for denying their
> claim.

Def.'s Mot. App. B ¶ 6.  Defendant also argues that "[o]ther documents related to plaintiffs' administrative appeal, which were prepared by Ms. Schmitz prior to the July 26, 2011[] letter, confirm Ms. Schmitz's understanding at the time that plaintiffs had **not** filed an application for an extension."  Def.'s Mot. at 9. Specifically, defendant cites to a "Case Activity Record" containing Ms. Schmitz's notes taken while working on the Ebeyers' administrative appeal, *see id.* App. B, Ex. A, and an "Appeals Transmittal and Case Memo" prepared by Ms. Schmitz on July 25, 2011, *see id.* App. B, Ex. B.  The "Case Activity Record" contains two entries, made by Ms. Schmitz on July 20 and July 21, 2011, indicating that plaintiffs had not filed a request for an extension.[9]  *See id.* App. B, Ex. A.  In addition, the "Case Activity Record" contains an entry made by Ms. Schmitz on July 25, 2011 which memorialized Ms. Schmitz's "recommend[ation] that this claim be denied due to late filing."  *Id.*  Likewise, the "Appeals Transmittal and Case Memo" prepared by Ms. Schmitz on July 25, 2011 recommended that plaintiffs' refund claim be denied because they "did not file an extension for 2006" and "d[id] not provide a valid reason for the delay in filing their 2006 return."  *Id.* App. B, Ex. B at B9.

### a.   Inadmissible Hearsay

Plaintiffs offer no evidence rebutting Ms. Schmitz's declaration and supporting documents.  Instead, although it is not entirely clear from plaintiffs' response, plaintiffs appear to object to the documents attached to Ms. Schmitz's declaration on the ground that these documents constitute inadmissible hearsay. *See* Pls.' Resp. at 7-8; Pls.' Resp. to DPFUF ¶¶ 18, 21.  Plaintiffs also object to Ms. Schmitz's declaration itself on the ground that it "appears to be dated after this

---

[9]/ Plaintiffs offer no objection to defendant's proposed finding of uncontroverted fact stating that "[t]he Case Activity Record for plaintiffs' administrative appeal contains two entries made by Appeals Officer Grace Schmitz on July 20, 2011, and July 21, 2011, noting that plaintiffs had not filed for an extension of time to file their 2006 income tax return."  *See* Pls.' Resp. to DPFUF ¶ 20.

action was filed – [*i.e.,*] it contains the marking '(4/20/2012)' in the corner." Pls.' Resp. at 4; Pls.' Resp. to DPFUF ¶ 18. The court finds these arguments to be unpersuasive. The "Case Activity Record" and "Appeals Transmittal and Case Memo" attached to Ms. Schmitz's declaration were themselves prepared prior to the filing of this case. Furthermore, these documents are admissible as business records under FRE 803(6) based upon Ms. Schmitz's assertion, in her declaration, that she prepared these records based upon her personal observations, and did so in her official capacity and in the ordinary course of business. *See* Def.'s Mot. App. B ¶¶ 3-4. Plaintiffs cite no authority prohibiting the court from considering declarations in support of a motion for summary judgment merely because such declarations were created after the initiation of litigation. To the contrary, as defendant correctly notes, such declarations are expressly authorized by RCFC 56(c), which identifies "affidavits or declarations" as evidence that may be used to support or oppose a motion for summary judgment. *See* Def.'s Reply at 5-6.

### b.    Equitable Estoppel

Plaintiffs also argue that "the government is barred from denying the existence of [plaintiffs' alleged] extension under the doctrine of estoppel" because the Ebeyers relied upon Ms. Schmitz's July 26, 2011 letter to their detriment. Pls.' Resp. at 8. This argument, too, is meritless.

Equitable estoppel "is a judicial remedy by which a party may be precluded, by its own acts or omissions, from asserting a right to which it otherwise would have been entitled." *Carter v. United States*, 98 Fed. Cl. 632, 638 (2011) (citation and internal quotation marks omitted). The elements of equitable estoppel are: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend, or act in a manner that the other party has reason to believe it intends, for its conduct to be acted on; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the other party's conduct to its injury. *Am. Airlines, Inc. v. United States*, 77 Fed. Cl. 672, 679 (2007) (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992), and *Boeing Co. v. United States*, 75 Fed. Cl. 34, 48 (2007)), *aff'd*, 551 F.3d 1294 (Fed. Cir. 2008).

As an initial matter, plaintiffs' estoppel theory is foreclosed by binding precedent holding that "actions of regulatory authorities cannot either extend the

19

statute of limitations under [§] 6511 by equitable tolling or create an estoppel against the government." *Computervision Corp. v. United States*, 445 F.3d 1355, 1368 (Fed. Cir. 2006) (citing *Brockamp*, 519 U.S. at 352, and *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 434 (1990)); *see also Manor Care, Inc. v. United States*, 630 F.3d 1377, 1385 (Fed. Cir. 2011) ("The general rule is that estoppel will not lie against the government because of actions by government agents.  As a general matter, tax law requires strict adherence to the Code as written.") (citation omitted).

Although the United States Supreme Court "has declined to adopt a broad rule that equitable estoppel is never available against the government," *Frazer v. United States*, 288 F.3d 1347, 1352-53 (Fed. Cir. 2002) (citing *Richmond*, 496 U.S. at 423-24), the Court has unequivocally stated that equitable estoppel will not lie against the United States for "claim[s] for the payment of money from the Public Treasury contrary to a statutory appropriation." *Richmond*, 496 U.S. at 424; *accord Burnside-Ott Aviation Training Ctr., Inc. v. United States*, 985 F.2d 1574, 1581 (Fed. Cir. 1993) (citing *Richmond*, 496 U.S. at 424).  To read equitable exceptions into § 6511 to excuse plaintiffs' otherwise untimely tax refund claim would violate the rule announced in *Richmond* and its progeny.  This conclusion finds support in the Supreme Court's decision in *Brockamp*, in which the Court noted that § 6511 "sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions," 519 U.S. at 350, and also "sets forth explicit exceptions to its basic time limits" which do not include equitable exceptions, *id.* at 351.  In declining to apply the analogous doctrine of equitable tolling to the timeliness requirements of § 6511, the Supreme Court in *Brockamp* concluded that "[§] 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote."  *Id.* at 352.  The Court further stated that "[t]ax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities."  *Id.*  These authorities preclude the application of equitable estoppel to resuscitate plaintiffs' otherwise time-barred refund claim.

The court notes that the government has presented arguments in support of its contention that, even if equitable estoppel were permitted in tax refund cases,

plaintiffs have failed to satisfy the elements of equitable estoppel in this instance. *See* Def.'s Reply at 7-9. Specifically, defendant claims that "plaintiffs cannot under any circumstance establish the element of detrimental reliance." *Id.* at 8. Because the law is clear that equitable estoppel will not lie against the government for tax refund claims otherwise barred by § 6511, an extensive examination of defendant's alternative arguments is not necessary. *Cf. RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1463 (Fed. Cir. 1998) (stating that "since there clearly is no equitable exception in [the statute of limitations set forth in I.R.C. § 6532], it is not necessary to decide if equitable estoppel would be enforced against the United States if an equitable exception were found in a tax refund statute of limitations").

Defendant is correct to point out, however, that "if equitable estoppel is to apply against the government, then 'some form of affirmative misconduct must be shown in addition to the traditional requirements of estoppel.'" Def.'s Reply at 8 (quoting *Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000)); *see also United States v. Ford Motor Co.*, 463 F.3d 1267, 1279 (Fed. Cir. 2006) ("[E]stoppel is available against government actors only in cases involving 'affirmative misconduct.'" (quoting *Rumsfeld v. United Techs. Corp.*, 315 F.3d 1361, 1377 (Fed. Cir. 2003), and *Henry v. United States*, 870 F.2d 634, 637 (Fed. Cir. 1989))). Plaintiffs in this case have produced no evidence of such affirmative misconduct on the part of the IRS or its employees.

Nor have plaintiffs produced any evidence of detrimental reliance on Ms. Schmitz's July 26, 2011 letter. As the government convincingly argues in its reply brief, by July 26, 2011 the look-back period under § 6511(b)(2)(A) had already expired, regardless of whether plaintiffs had requested or been granted a six-month extension to file their 2006 return. *See* Def.'s Reply at 8. Therefore, Ms. Schmitz's letter could not possibly have induced any action by plaintiffs that could have had any effect on the timeliness of their refund claim under § 6511(b)(2)(A), and plaintiffs' estoppel claim fails as a matter of law for this additional reason. *See Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 61 (1984) ("[H]owever heavy the burden might be when an estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present.").

### 2.    Plaintiffs' Uncorroborated Testimony

Finally, without any documentary evidence supporting their contention that they requested and were granted an extension to file their 2006 return, plaintiffs are left with nothing but their testimony, in answers to interrogatories and in depositions, that Mr. Ebeyer prepared and submitted a request for an extension at some point before April 15, 2007.  This testimony is not only uncorroborated but is also contradicted by the documentary evidence presented by defendant.  *See* Def.'s Mot. at 8-9.  Specifically, as noted, the Ebeyers stated in their administrative appeal that their 2006 return "was due by April 15, 2007" and they "were under the impression that if we had not filed for an 'extension' we were going to lose our refund," but that they had waited until October 2010 to file their 2006 return because they lost their 2006 tax files in the aftermath of Hurricane Katrina.  Def.'s Mot. App. E, Ex. 4 at E10-E11.  Then, in subsequent correspondence to the IRS dated April 28, 2011 and June 16, 2011, the Ebeyers acknowledged that they had filed their refund claim "late" yet asked the IRS to make an exception to the deadline "based on exceptional circumstances."  *Id.* App. E, Exs. 5-6.

The government, citing several decisions of this court and its predecessor, argues that plaintiffs' uncorroborated testimony is "inadequate at all events to prove proper filing [of a request for an extension] with the IRS" and is also "insufficient to rebut the presumption of correctness associated with IRS records."  Def.'s Mot. at 11-12 (citing, *e.g.*, *Doyle*, 88 Fed. Cl. at 320 ("[A] taxpayer's own uncorroborated testimony to show timely mailing is not enough to establish a presumption of delivery under any view of the law.") (citation omitted), *Davis*, 43 Fed. Cl. at 94-95 (holding that plaintiff's uncorroborated testimony that he timely mailed his refund claim to the IRS was insufficient to prove timely filing and to rebut a presumptively accurate "IRS Certification of Lack of Record" and an accompanying declaration from an IRS employee), and *McIlvaine v. United States*, 23 Cl. Ct. 439, 442-43 (1991) (holding that plaintiffs' uncorroborated testimony that they timely mailed their tax return to the IRS on September 4, 1982 was insufficient to rebut IRS records showing receipt of plaintiffs' return on January 6, 1986, and failed to raise a genuine issue of material fact regarding the date on which plaintiffs filed their return)).  The court finds these authorities to be persuasive, and agrees that plaintiffs' self-serving and conclusory assertions are insufficient to demonstrate the existence of a genuine issue of material fact on the question of whether plaintiffs requested an extension of time to file their 2006

return, particularly in light of the fact that plaintiffs' own written statements contradict such assertions.  *See Anderson*, 477 U.S. at 248-50, 256; *Matsushita*, 475 U.S. at 586; *Barmag*, 731 F.2d at 835-36.

## CONCLUSION

Plaintiffs' refund claim is barred by § 6511(b)(2)(A) unless plaintiffs requested and were granted a six-month extension of the statutory deadline to file their 2006 return.  Because plaintiffs have failed to present sufficient evidence for a reasonable trier of fact to find that plaintiffs requested such an extension, and because plaintiffs have failed to rebut the presumption of correctness afforded IRS records contradicting plaintiffs' assertions in that regard, the government is entitled to summary judgment with respect to plaintiffs' refund claim.  Accordingly, it is hereby **ORDERED** that

(1)   Defendant's Motion for Summary Judgment, filed September 4, 2013, is **GRANTED**;

(2)   The Clerk's Office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** the complaint **with prejudice**; and

(3)   Each party shall bear its own costs.


/s/Lynn J. Bush
LYNN J. BUSH
Senior Judge